IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BRYCE FRANKLIN,

    Plaintiff,

v.                                                        Civ. No. 23-902 WJ/GBW

THE GEO GROUP, INC., *et al.*,

    Defendants

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before me on Defendant The GEO Group, Inc.'s (GEO) Motion to Dismiss (*doc. 16*) and pursuant to the Order of Reference (*doc. 7*). I RECOMMEND granting dismissal for the reasons explained below.

**I.**     **Background**[1]

Plaintiff is a state prisoner currently serving a life sentence. *Doc. 11* at ¶ 4. Defendant GEO is a private corporation contracted to operate Northeast New Mexico Detention Facility (NENMDF), where Plaintiff was housed from July 2, 2013, to June 14, 2017. *Id*. at ¶¶ 4, 11. On January 31, 2017, Plaintiff was rehoused from the general population to restrictive housing pending disciplinary proceedings. *Id*. at ¶ 12. He was served with an inmate misconduct report for possession of escape paraphernalia,

---

[1] Because GEO moves for dismissal under Fed. R. Civ. P. 12(b)(6), the Court takes as true—for purposes of this motion only—all well-pleaded factual allegations in the complaint.

alleging that his cell had been searched and "sensitive documents" found. *Id*. at ¶¶ 13–14.  At the ensuing disciplinary hearing, Plaintiff claimed that the search was a sham and requested that video footage be reviewed. *Id*. at ¶ 16.  However, Defendant T. Hernandez, Plaintiff's hearing officer, refused to review the video footage. *Id*. at ¶ 18.  On February 28, 2017, Plaintiff was found guilty and sanctioned—relevant to the present suit—with the loss of 90 days' good time. *Id*. at ¶ 19.

Plaintiff petitioned this court for a writ of habeas corpus on December 3, 2018.[2] *See Franklin v. Lucero*, Civ. No. 18-1156 JB/JHR.  The court granted habeas relief on March 21, 2024, setting aside the disciplinary adjudication and sanction and remanding for a new disciplinary hearing, or in the alternative, restoration of Plaintiff's good time credits. *Franklin v. Lucero*, 2022 U.S. Dist. LEXIS 178519 (D.N.M. Sept. 30. 2022).  The hearing officer dismissed the report and restored the 90 days of good time without holding a hearing. *Doc. 11* at ¶ 26.

Plaintiff now asserts a claim under 42 U.S.C. § 1983 for denial of due process under the Fourteenth Amendment, a claim for denial of due process under the New Mexico Constitution, Art. II § 18, and state law tort claims of malicious abuse of process, negligence, negligence per se, negligence in training, and respondeat superior. *Id*. at ¶¶ 28–47.  He seeks declaratory relief and compensatory and punitive damages. *Id*. at 10.

---

[2] The habeas petition is one of numerous state and federal actions filed by Plaintiff based on the same underlying facts.

2

The case was filed in the First Judicial District Court, County of Santa Fe, on July 3, 2023, and removed to federal court on October 16, 2023.  *Docs. 1, 1-1.*

## II.     Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Leverington v. City of Colorado Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This standard does not require "detailed factual allegations," but it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When ruling on a 12(b)(6) motion, the court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs."  *Leverington*, 643 F.3d at 723 (quoting *Dias v. City & Cnty. Of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)).  The court need not accept the truth of any legal conclusions.  *Iqbal*, 556 U.S. at 678.

Both Plaintiff and GEO attach exhibits to their briefing to reflect the deprivation and restoration of Plaintiff's good time credits.  Generally, the court may consider materials outside the complaint "only by converting the motion to dismiss to a motion for summary judgment."  *Lincoln v. Maketa*, 880 F.3d 533, 537 n.1 (10th Cir. 2018) (citing *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253 (10th Cir. 2005)).  However, "a document central to the plaintiff's claim and referred to in the complaint

3

may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute." *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005) (citations omitted). Because the figuring of Plaintiff's good time credits—including their restoration—is essential to his claims and referenced in the Amended Complaint, and because the authenticity of the documents is not in dispute, I find these documents may be considered without conversion to summary judgment.[3]

## III.   Analysis

GEO argues that Plaintiff has failed to state a claim because his claims are barred by (1) the statute of limitations, (2) claim preclusion, (3) issue preclusion, and (4) the general prohibition on collateral attacks to state court judgments.

### A.  Application of *Heck* to Plaintiff's § 1983 Claims

GEO first argues that Plaintiff's claims are time-barred. The statute of limitations for § 1983 claims brought in New Mexico is three years. *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014); NMSA § 37-1-8. The present action was filed on July 3, 2023, well outside the ordinary limitations period. However, the parties agree that if Plaintiff was required to file a habeas petition before he could assert claims under § 1983, the present action is not time-barred. *See Heck v. Humphrey*, 512 U.S. 477, 489 (1994) ("Under our analysis the statute of limitations poses no difficulty while the state

---

[3] In the alternative, I note that I would reach the same conclusions and make the same recommendations under the summary judgment standard. *See* Fed. R. Civ. P. 56.

challenges are being pursued, since the § 1983 claim has not yet arisen."). Therefore, the timeliness of Plaintiff's claims turns on the application of *Heck*.

In *Heck*, the Supreme Court held that a state prisoner's § 1983 claim is not cognizable "if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id*. at 487. The plaintiff must first prove that the conviction or sentence has been "reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus" before he can proceed with his claim. *Id*. at 489. *Heck* does not apply "categorically to all suits challenging prison disciplinary proceedings." *Muhammad v. Close*, 540 U.S. 749, 754 (2004). Rather, in keeping with the underlying principle, suits challenging disciplinary proceedings are barred only if they "affect the duration of time to be served." *Id*. The general rule is that § 1983 may not be used to challenge the deprivation of good time credits. *See Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("When a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *Edwards v. Balisok*, 520 U.S. 641, 643–44, 648 (1997) (an inmate's action for damages and declaratory relief based on the revocation of good-time credits "earned toward his release" is not cognizable under § 1983). This is so because, generally, restoration of an inmate's credits will either result in "immediate release" or in "shortening the length of their actual confinement." *Edwards*, 520 U.S. at 487. But "§

5

1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (emphasis in original); *see also Skinner v. Switzer*, 562 U.S. 521, 535 n.13 (2011) ("[W]hen a prisoner's claim would not necessarily spell speedier release, that claim does not lie at 'the core of habeas corpus,' and may be brought, if at all, under § 1983.").

GEO contends that because Plaintiff is serving a life sentence, the deprivation or restoration of his good time credits does not "necessarily" affect the duration of his confinement. *See doc. 16* at 6–7. In support of this argument GEO cites *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016), *cert. denied*, 580 U.S. 1063 (2017). Nettles, a state prisoner, filed a habeas petition seeking expungement of a disciplinary report and restoration of thirty days of post-conviction credits. *Id*. at 927. He argued his claim was cognizable in habeas because the disciplinary decision "delayed his parole hearing and constituted grounds for future denial of parole." *Id*. Reviewing Supreme Court precedent, the Ninth Circuit concluded that "[i]f the invalidity of the disciplinary proceedings, *and therefore the restoration of good-time credits*, would not necessarily affect the length of time to be served, then the claim falls outside the core of habeas and may be brought in § 1983." *Id*. at 929 (emphasis added). Nettles argued that his claims affected the duration of his sentence because if the violation was expunged, his parole hearing would likely be set at an earlier date and would more likely result in a

6

favorable ruling. *Id*. at 934. But the Ninth Circuit found that "[s]uccess on the merits of Nettles's claim would not necessarily lead to immediate or speedier release because the expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole." *Id*. at 934–35. Nettles also argued that "once granted parole, the panel's calculation of the time he must serve before release [would] necessarily be affected by the reinstated postconviction credits." *Id*. at 934 n.12. The Ninth Circuit found this argument was "no longer relevant" because, under a new law passed in 2016, "the panel no longer calculates a release date." *Id*. (citing Cal. Penal Code § 3041(a)). The court noted that "under California law, prisoners with life terms like Nettles may not be released before their minimum eligible parole date." *Id*. at 925 (citing Cal. Penal Code § 3041(a)(4)). Even then, the panel is required to determine the prisoner's suitability considering "all relevant" information. *Id*. (quoting Cal. Code. Regs. Tit. 15, § 2281(b)). Because Nettles' success "would not necessarily lead to his immediate or earlier release from confinement," the claim did not lie at "the core of habeas corpus" and could only be brought under § 1983. *Id*. at 935.

The holding of *Nettles* as it relates to prisoners serving life sentences has been neither adopted nor rejected in the Tenth Circuit.[4] However, it is consistent with the

---

[4] The District of New Mexico cases cited by GEO for this proposition do not reference the applicability of the *Heck* bar to prisoners serving a life sentence. In addition, they do not address Plaintiff's good time credits but rather his disciplinary record. *See Franklin v. Martinez*, Civ. No. 20-576 MIS/JFR, 2024 U.S. Dist. LEXIS 121380, at *7–8 (D.N.M. Jul. 10, 2024); *Franklin v. Lucero*, Civ. No. 18-1156 JB/JHR, 2024 U.S. Dist. LEXIS 35635, at *6 (D.N.M. Feb. 28, 2024), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 50711 (D.N.M. Mar. 21, 2024).

reasoning of *Wilkinson*, where the plaintiffs challenged the state parole board's procedures under § 1983 and sought new parole hearings. 544 U.S. at 77. The state argued that the plaintiffs' suits collaterally attacked the duration of their confinement because they clearly believed victory would lead to an earlier release. *Id*. at 78. The Court rejected this argument because the link between the challenged parole proceedings and release from confinement was "too tenuous." *Id*. Rather, the plaintiffs' release would remain discretionary even if their claims succeeded:

> Success for Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed *consideration* of a new parole application. Success for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term.

*Id*. at 82 (emphasis in original) (citing Ohio Rev. Code Ann. § 2967.03). The claims were therefore cognizable under § 1983. *Id*. Because the Ninth Circuit's reasoning in *Nettles* follows directly from this logic, I find it persuasive.

The operative question, therefore, is whether the deprivation of Plaintiff's good time credits actually affected the duration of his confinement. *See Hebrard v. Nofziger*, 90 F.4th 1000, 1009 (9th Cir. 2024) (noting that "*Heck* cannot apply to Hebrard's claim unless the prison's revocation of his earned-time credits had an effect on the duration of time to be served" and finding that, "under Oregon law, '[earned-]time credits [] have the effect of reducing the sentence served.'" (quoting *Burns v. Newell*, 507 P.2d 414, 415 (Or. Ct. App. 1973))). Plaintiff alleges that he is serving a life sentence. *Doc. 11* at ¶ 4.

8

The "Good Time Credits Figuring Sheet" submitted by Plaintiff[5] also indicates that Plaintiff is serving a life sentence for murder in the first degree. *Doc. 22* at 3, 5. The crime was committed in 2012 and the discharge date is listed as "Indef" [sic]. *Id*.

Under New Mexico law, "good time deductions may not be awarded to inmates serving life imprisonment." *State v. Montano*, 557 P.3d 86, 89 (N.M. 2024); *see* NMSA § 33-2-34(G) (2024)[6] ("The provisions of this section shall not be interpreted as providing eligibility to earn meritorious deductions from a sentence of life imprisonment or a sentence of life imprisonment without possibility of release or parole."); *Litteral v. Marshall*, 437 F. App'x 749, 750 (10th Cir. 2011) ("Although Mr. Litteral has earned over twenty years of good time credits, he is serving a life sentence, and the New Mexico Supreme Court has held that lifers cannot be released on parole before serving thirty years, regardless of the good time credits they may have accrued." (citing *Compton v. Lytle*, 81 P.3d 39 (N.M. 2003))). The parole statute provides: "Except as provided in Section 31-21-10.2 NMSA,[7] an inmate of an institution who was sentenced to life imprisonment becomes eligible for a parole hearing after the inmate has served thirty

---

[5] Because these materials—though filed untimely and without leave—were directly responsive to the arguments and exhibits in GEO's reply, I recommend denying GEO's Motion to Strike Plaintiff's Supplemental Response Exhibit to Motion to Dismiss (*doc. 26*) and considering the supplemental material. *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003) ("[I]f the court relies on new materials *or* new arguments in a reply brief, it may not forbid the nonmovant from responding to these new materials." (quoting *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998))).

[6] Under the current version of § 33-2-34, effective June 20, 2025, this provision has been moved to section (I). The language remains unchanged.

[7] NMSA § 31-21-10.2 applies to children sentenced as adults. There is no indication that it applies to Plaintiff.

9

years of the sentence." NMSA § 31-21-10(A). Before granting parole, the board is directed to interview the inmate, consider all pertinent information including six enumerated factors, make a finding that parole is in the best interest of society and the inmate, and make a finding that the inmate is able and willing to fulfill the obligations of a law-abiding citizen. *Id*.

Plaintiff argues that *Heck* applies to his claims because, at the time of the disciplinary proceedings, he was serving his nine-year prison sentence for conspiracy to commit armed robbery and not his life sentence for first degree murder. *Doc. 17* at 4. The undersigned takes judicial notice that Plaintiff received consecutive sentences for these offenses. *See State v. Franklin*, NO. S-1-SC-35577, 2017 N.M. Unpub. LEXIS 7, at *1 (N.M. 2017). Plaintiff attaches a "Recommendation for Restoration of Forfeited Good Time" dated June 6, 2023, *doc. 17* at 8, which he claims shows that he was serving a prison sentence for robbery. However, the form indicates that the restoration of credits applies to both 1333-CR-2012-00184 and 1333-CR-09-00056, the first of which is Plaintiff's first degree murder case. *See* NMCD Offender Search, *available at* https://www.cd.nm.gov/offender-search/ (accessed Sept. 8, 2025). The "Good Time Figuring Sheet" submitted by GEO indicates that Plaintiff began serving his life sentence for first degree murder on September 23, 2016, prior to the 2017 disciplinary hearing, and that his "parole status" is precisely thirty years later—on September 23, 2046. *Doc. 18-1* at 1. Plaintiff does not allege in the Amended Complaint that the

10

deprivation of good time credits actually altered the duration of his confinement. *See generally* doc. 11. He does not deny that he is serving a life sentence, or that his release date is indefinite and depends on the discretion of the parole board. Indeed, even taking as true the argument that he was not serving a life sentence at the time of the hearing—which is contradicted by the exhibits—Plaintiff's contention is that "it will take an additional 90 days before [he] will be eligible for *discretionary* parole." *Doc. 17* at 4 (emphasis added). New Mexico law does not guarantee Plaintiff parole at the conclusion of thirty years of his life sentence; it provides only that he will receive a hearing. *See* NMSA § 31-21-10(A). I therefore find, applying the reasoning of *Wilkinson* and the persuasive holding of *Nettles*, that the deprivation and restoration of Plaintiff's good time credits did not "necessarily" affect the duration of his confinement. In consequence, *Heck* did not bar his § 1983 claims and they are now barred by the statute of limitations.

B. <u>Timeliness of State Law Claims</u>

Plaintiff argues that *Heck* also barred his state law tort claims until habeas relief was granted, and GEO argues categorically that it did not. Based on the plain language of *Heck* and the lack of supporting authority, it is unlikely that *Heck* applies to state claims under New Mexico law. *See, e.g.*, *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 521 n.31 (10th Cir. 2023) (finding that "it is not necessary to consider whether the *Heck* bar is applicable to the . . . state-law claims" and discussing case law); *but see Price*

*v. City of Bossier*, 841 F. App'x 650, 654 & n.4 (5th Cir. 2021) (making an "*Erie* guess" that the Louisiana state courts would apply the *Heck* rationale to state law tort claims).

There is no need to resolve that question here. Because, as discussed above, I find that *Heck* did not bar Plaintiff's § 1983 claims, there is no reason to believe it barred his state law claims. Plaintiff does not dispute that the statute of limitations has run on his state tort claims if the *Heck* bar does not apply. *See* NMSA §§ 41-4-15(A) (two-year limitations period for actions against governmental entities or public employees), 41-4A-7 (three-year limitations period for deprivation of rights under the New Mexico constitution), 37-1-8 (three-year limitations period for personal injury), 37-1-4 (four-year limitations period for all "actions not herein otherwise provided for"). I therefore recommend dismissal of the state law claims against GEO because they are time-barred.

C. <u>Claims Against Unserved Defendants</u>

Nearly two years after removal, the four individual defendants in this case have yet to be served. On September 5, 2024, the Court determined that the individual defendants had not been served and ordered as follows:

> Within thirty (30) days of this Order, Plaintiff must: (1) effectuate service on Jackson, Montoya, Hatch, and Hernandez, if he has not already done so, and (2) file an amended certificate of service reflecting the date of service and address used for each non-corporate Defendant. If Plaintiff fails to timely comply with this Order and/or the service requirements of Rule 4, the Court may dismiss his claims against any unserved Defendants without further notice.

*Doc. 6* at 2.  In addition, the Court noted that "Plaintiff is not proceeding in forma pauperis in this Court and is therefore not entitled to court-supplied service on the non-corporate Defendants." *Id*. (citing Fed. R. Civ. P. 4(c)(3)).

On September 23, 2024, Plaintiff filed a Motion for a Time Extension to Serve Defendants.  *Doc. 8*.  He requested "appropriate time" to serve the remaining defendants and indicated that this would require "more than 30 days." *Id*. at 2.  This motion remains pending.  He then filed a Motion to Compel Discovery (*doc. 12*), asking the Court to compel GEO's response to interrogatories about the unserved defendants' full names and contact information, and a Motion for U.S. Marshall's [sic] Office to Serve Defendant Timothy Hatch (*doc. 13*).  Both motions were denied on January 24, 2025. *Doc. 15*.  Plaintiff filed a Motion for Clarification and Time Extension to Serve Defendants (*doc. 20*), asking that the time to serve the remaining defendants be stayed "until [the] motion to compel has been ruled on," *id*. at 2, and a Motion to Hold Defendant the GEO Group in Contempt (*doc. 21*), on grounds that GEO had not filed an "answer" as ordered and had not filed a response to the motion to compel.[8]

Under Fed. R. Civ. P. 12(b)(5), a lawsuit may be dismissed for insufficient service of process.  A plaintiff bears the burden of establishing that service of process was sufficient.  *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.

---

[8] When Plaintiff filed his Motion for Clarification and Time Extension, the motion to compel had already been denied and GEO had filed a responsive pleading to the Amended Complaint.  *See docs. 15*, *16*.  I therefore recommend that Plaintiff's motion be denied.

13

1992). Process is insufficient if it is untimely. *See, e.g. Espinoza v. United States*, 52 F.3d 838 (10th Cir. 1995). The Federal Rules provide that that if "a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). "Good cause" in this context is "read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule." *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir. 1994). "Inadvertence, negligence, ignorance of the service requirements, and reliance on a process server have all been determined not to constitute good cause." *Lopez v. United States*, 129 F. Supp.2d 1284, 1295 (D.N.M. 2000) (citing *Broitman v. Kirkland*, 86 F.3d 172, 174 (10th Cir. 1996); *Cox v. Sandia Corp.*, 941 F.2d 1124, 1125-26 (10th Cir. 1991)). "Good cause comes into play in situations in which there is no fault—excusable or otherwise." *Utah Republican Party v. Herbert*, 678 F. App'x 697, 700 (10th Cir. 2017) (quoting *Bishop v. Corsentino*, 371 F.3d 1203, 1207 (10th Cir. 2004)).

Plaintiff received clear notice on September 5, 2024, that the individual defendants had not been served and that claims against them would be dismissed if he failed to effectuate service within 30 days. *Doc. 6* at 2. An additional year has now passed. Plaintiff has not demonstrated good cause for the failure to serve. Moreover,

14

although I do not consider it in the good cause analysis, I note that as a practical matter, the claims alleged against the individual defendants would be subject to dismissal for the same reasons as the claims against GEO. I therefore recommend that Plaintiff's motions for extension of time to serve be denied and that the claims against the unserved defendants be dismissed.

## IV.  Conclusion

For the foregoing reasons, I recommend:

(1) GRANTING GEO's Motion to Dismiss (*doc. 16*);
(2) DENYING GEO's Motion to Strike Plaintiff's Supplemental Response Exhibit to Motion to Dismiss (*doc. 26*);
(3) DENYING Plaintiff's Motion for a Time Extension to Serve Defendants (*doc. 8*);
(4) DENYING Plaintiff's Motion for Clarification and Time Extension to Serve Defendants (*doc. 20*); and
(5) DENYING Plaintiff's Motion to Hold Defendant the GEO Group in Contempt (*doc. 21*).

I further recommend that all claims against Defendants D. Jackson, Matthew Montoya, Timothy Hatch, and T. Hernandez be dismissed.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE